No. 20,978.

The City of Scammon, *Appellee,* v. The American Gas Company, *Appellant,* and The Welsbach Street Lighting Company, *Defendant.*

SYLLABUS BY THE COURT.

Gas Company—*Public Utility—Nonfeasance Primarily under Control of Utilities Commission—Mandamus Refused.* A gas company supplying several cities had, for years, under a franchise with the city of Scammon, supplied gas to a street lighting company—the latter paying for all the service pipes leading from the gas company's mains to the lighting company's posts in excess of fifty feet from such mains. Such service pipes becoming leaky and dangerous, the gas company turned off the supply from thirteen of the sixty-five posts. The city, by ordinance, directed the gas company to repair and maintain such service pipes, and to restore the supply of gas, and, upon refusal,

sought by mandamus to compel obedience. *Held,* that such controversy should be submitted to the public utilities commission under section 20 of chapter 238 of the Laws of 1911, and is not a proper one to be controlled by mandamus in the first instance.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed October 19, 1916. Reversed.

*Edward E. Sapp,* of Galena, for the appellant.
*L. M. Resler,* city attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: The American Gas Company appeals from a judgment in mandamus requiring it to furnish gas for the street lights in the city of Scammon, and to lay and maintain in good condition and repair, service pipes to such lamps. From the pleadings, evidence and admissions, it appears that in 1905 the city enacted an ordinance giving to certain persons and their successors authority to "construct, acquire, operate and maintain gas works in the city of Scammon, Kansas, . . . and to sell and supply natural gas to said city and its inhabitants, and to enter upon and dig and excavate in the streets, . . . and to lay, maintain and operate in the said streets, . . . gas mains and gas pipes, with all necessary and proper attachments, connections, fixtures and appurtenances, . . . with the right at all times hereafter during said period to dig and excavate for the purpose of relaying, repairing, replacing and removing the said gas mains or pipes or any portion thereof, and for the same purpose to make connections for consumers and such pipes and mains."

Section 3 provided that "No person, company or corporation shall be permitted to make any connections with any of the distributing or service pipes of the said grantees, unless duly authorized by said grantees, their successors or assigns." By another ordinance, passed in 1906, the Welsbach company was granted a franchise "to lay in the streets of the city of Scammon gas pipes and connections, erect therein lamp posts and lamps and maintain in said streets and other public places all such fixtures and other equipment as shall be necessary for the furnishing of gas light to the city under the contract

herein made; provided that all sidewalks and streets shall be fully restored to their former condition by said lighting company." The lights were to be fixed at such points as should be designated by the city; provided that none should be required to be placed at a point more than 175 feet distant from any domestic gas main of the American Gas Company.

It was admitted that in pursuance of this ordinance, the Welsbach company did lay, or cause to be laid, mains to its posts, also that under a contract made in 1906 between the two companies, the Welsbach company paid for all the service pipes extending more than fifty feet from the mains of the American Gas Company for lamps installed by the former company, and that up until the passage of ordinance No. 89 the Welsbach company paid the cost of repairs upon these service pipes. The contract referred to bound the gas company to furnish natural gas for the street lights erected or to be erected by the Welsbach company, and provided, among other things, that all the lamp posts, fixtures, lanterns and lamps furnished by the lighting company should remain its property, and that the gas company should "make the necessary taps in the gas mains for said service connections, and to furnish and lay at its own expense the necessary fifty feet for each service, it being understood and agreed that any service pipe in excess of fifty feet for any one service is to be provided for by said second party [the Welsbach company]."

It was alleged in the answer of the lighting company that the gas company failed to keep its mains and service pipes in repair, and that the lighting company refused to renew the contract of 1906 except upon condition that the city furnish and deliver the gas to the lamps, which was agreed to by the lighting company and the city, and the Welsbach company prayed that the gas company be required to lay and maintain in good order all necessary service pipes from its mains to the lamps, and to furnish the necessary gas.

In September, 1915, the city enacted ordinance No. 89, declaring it necessary and ordering that the gas company furnish and deliver natural gas to sixty-five street lamps and such additional ones as might thereafter be ordered, also directing the company to lay and maintain in good condition and repair the service pipes to such lamps. The gas company, which

supplies several cities, challenging the jurisdiction of the court and invoking that of the public utilities commission, answered that it was under no contract with the city to furnish gas to light its streets, and that it was the duty of the lighting company to keep the service pipes in safe condition and repair, and as this was not done and the pipes became leaky and dangerous, the supply from thirteen of the lamps was shut off. Complaint was made that by ordinance No. 88 the city cut in two the price formerly received for the gas furnished for the street lights, but the abstract contains the following:

"Admitted: At that time and in this case the question was not before the court as to the price to be paid by the city of Scammon for gas. That the subject is a matter either of contract or under the control of the Board of Public Utilities."

This matter being eliminated, the only question for consideration is whether or not the judgment requiring the gas company to furnish gas and to repair and maintain the service pipes was proper.

While section 40 of the public utilities act (Laws 1911, ch. 238) makes the remedies provided in the act cumulative and not exclusive, still section 20 fits the situation so precisely that upon the authority of *The State, ex rel., v. Postal Telegraph Co.*, 96 Kan. 298, 150 Pac. 544, we hold that the commission and not the court should determine the controversy. That section expressly prohibits a public utility from making any change in any "rule or regulation or practice pertaining to the service or rates," without the consent of the commission. For many years the gas company supplied gas for the lamps, and to turn off this supply from thirteen of the sixty-five is clearly to make a change in its practice pertaining to the service. The repair and maintenance of service pipes, especially those portions thereof from points fifty feet from the gas company's mains to the Welsbach company's posts, while involving certain legal questions, are practically administrative matters very proper for determination by the commission, and the furnishing of the gas is still more clearly of such administrative character.

In the Postal Telegraph Company case mandamus was sought by the attorney for the commission to compel a res-

toration of service which had been discontinued without permission of that body, and this court declined to act until the defendant company should have an opportunity to file its application with the commission for formal leave to discontinue its station. It was said:

"But we insist that the first official tribunal to have consideration of such matters is the public utilities commission." (p. 307.)

In this case the city, instead of invoking the judicial process of mandamus, should have applied for relief to the tribunal expressly provided by law for the settlement of such controversies, and it was error under the circumstances to grant the writ.

The judgment is therefore reversed.