No. 21,458.

THE WELSBACH STREET LIGHTING COMPANY, *Appellant*, v. THE PUBLIC UTILITIES COMMISSION et al., *Appellees*.

SYLLABUS BY THE COURT.

1. PUBLIC UTILITY — *Power of Cities to Regulate — Powers of Utilities Commission.* The power to regulate the establishment and maintenance of lamp posts and lighting equipment for a city's streets, when such service is to be performed wholly or principally within the city, is specifically reserved to the city government by the public utilities act (Laws 1911, ch. 238, §§ 3, 33, Gen. Stat. 1915, §§ 8329, 8361), and such power is not vested in the public utilities commission, except as the subject matter may come before the commission by proceedings in the nature of appeal or review.

2. SAME. The provisions of the public utilities act forbidding changes in the service performed by a public utility company without consent of the public utilities commission does not require a utility company to continue a public service after its contract for that service has expired.

3. SAME. The plaintiff had a contract with the city of Scammon to establish and maintain street lamps and to light the city streets. Plaintiff purchased the gas for its lamps from a distributing gas company under a contract with the gas company approved by the city. Plaintiff's contract with the city was to endure ten years. At the expiration of the contract term the plaintiff discontinued its service, and made a new contract with the city whereby it was relieved from direct contract relations with the gas company. The public utilities commission ordered the prior service restored on the theory that that service could

not be changed without its consent. *Held,* that the subject matter was within the governmental and corporate control of the city, and not of the commission; and *held,* that the public utilities act did not extend the plaintiff's contract for service beyond its specified term of ten years.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion denying a rehearing filed November 10, 1917. (For former opinion of reversal see *ante,* p. 438, 166 Pac. 514.)

*J. W. Dana,* of Kansas City, Mo., for the appellant.

*H. O. Caster,* and *F. S. Jackson,* both of Topeka, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: A memorandum opinion was handed down in this case in July, when court was about to adjourn for the summer vacation. (101 Kan. 438, 166 Pac. 514.) Since then we have been favored with another brief by appellees, and their petition for a rehearing has been carefully considered.

The subject matter of the litigation concerns the legality of an order of the public utilities commission. From May 1, 1906, until May 1, 1916, the Welsbach Street Lighting Company had been performing a certain street lighting service in the city of Scammon. On May 1, 1916, the lighting company discontinued that service. The public utilities commission ordered the service continued and the rates restored. The lighting company brought this suit to enjoin the commission from enforcing its order.

The service which had been performed in the city of Scammon by the lighting company since May 1, 1906, was pursuant to a contract between the American Gas Company and the Welsbach Street Lighting Company and conformed to certain ordinances of the city of Scammon. The contract was to endure ten years; and in substance it provided that the Welsbach company should furnish certain street lamp posts, lamps, and lighting equipment, and care for and maintain the same, and the gas company was to furnish the gas for illumination in these lamps; and the city was to pay the Welsbach company for this service, and the Welsbach company was to pay a

stipulated sum to the gas company for the gas consumed in these street lamps.

When the ten years' contract was about to expire, the Welsbach company notified the gas company that it desired to terminate its contract relation; and thereafter, upon the expiration of its contract, it discontinued its acceptance of gas. The Welsbach company then made a new contract with the city of Scammon, in which upon agreed terms the Welsbach company was to furnish a service substantially similar to what it had furnished under the old contract, but in which the city itself undertook to procure the gas for the lighting, so that the Welsbach company would have no further direct dealings with the gas company—thus removing a feature of friction which had theretofore existed between the Welsbach company and the gas company.

The district court refused the injunction, which in effect was to hold that the Welsbach company was bound to obey the order of the public utilities commission and to continue its service under the rates and terms of its contract which expired May 1, 1916, notwithstanding the expiration of that contract, and notwithstanding that the Welsbach company and the city of Scammon had made a new contract to their mutual satisfaction.

It is contended by appellant, among other matters which may need no discussion, that the service of lighting of the streets of Scammon is governed by the city and not by the public utilities commission; and that the ten years' contract for the lighting service was not and can not be extended by the public utilities act.

The act which creates the public utilities commission and clothes it with power to supervise, regulate, and control all important public service companies doing business in Kansas reserves to the cities of this state the control and regulation of certain local utilities:

"The power and authority to control and regulate all public utilities and common carriers situated and operated wholly or principally within any city or principally operated for the benefit of such city or its people, shall be vested exclusively in such city, subject only to the right to apply for relief to said public utilities commission as hereinafter provided in section 33 of this act." (Laws 1911, ch. 238, § 3, Gen. Stat. 1915, § 8329.)

(See, also, § 33 of the utilities act, Gen. Stat. 1915, § 8361.)

So far as this record discloses, the business of the Welsbach Street Lighting Company is wholly confined to the city of Scammon. As such, the supervision, regulation and control of its affairs are vested in the city and not in the commission. Perhaps this company not only furnishes lamp posts, etc., in Scammon, but it may be furnishing gas mantles and globes in Salina, and it may be furnishing caretakers for street lights in St. Francis. But there is no such relation between these supposed kinds of service in these widely separated cities as' to render it impractical for the cities to govern completely the distinct kinds of business or service performed in their several jurisdictions. /This court will always extend a very liberal interpretation of the public utilities act so as to give the public utilities commission effective use of its lawful powers over the utilities companies lawfully subject to its control. Even where it is strongly debatable whether the utility's business is or is not confined principally to one town or city, this court is inclined to resolve the doubt in favor of the commission's authority. (*The State, ex rel., v. Water Co.,* 92 Kan. 227, 231, 140 Pac. 103.) This is wisely so, because wherever the business of a public utility company extends outside the limits of one city, even in a relatively small degree, complications as to the control of that service are likely to arise, or such outside service may go unregulated altogether unless the supervision of the state commission is recognized. But where the utility is subject to city control, and not to the state commission's control, the court's support of the city's powers must be just as liberal, so that the city may effectually exercise its governmental powers and discharge the duties entrusted to it by the legislature.

Apparently the commission and the trial court have attached a consequence not intended by this court to its decision in *City of Scammon v. Gas Co.,* 98 Kan. 812, 160 Pac. 316. The relation of the present plaintiff ·to the principal litigants in that case was not adjudicated by this court. The issue whether the Welsbach company was subject to the local control of Scammon or subject to the state control of the commission was not raised, and of course it was not decided.

Is the decision in *The State, ex rel., v. Gas Co.,* 88 Kan. 165, 127 Pac. 639, at variance with this view? Not necessarily.

Some language in that opinion might be so construed. The gist of that decision, however, was that the Wyandotte County Gas Company, which supplied gas to Kansas City and Rosedale, was not exempt from the control of the state commission merely because there was no physical connection between the "plants" of the two adjacent cities. Perhaps some language in the opinion in that case, if disassociated from its pertinent facts, was too broad. Certainly the court had no intention of declaring a rule that would make it impossible for a city like Scammon to control the service of furnishing lamp posts, etc., within its municipal limits, merely because the party furnishing that service might also be furnishing a service of the same or a different kind in another city a hundred miles away, with no necessary relation or interdependence between the service in the one city and the other.

The cities of this state have always had the power to regulate and control their local public service corporations—assuming that the furnishing of lamp posts, etc., is a public service. (Gen. Stat. 1868, chapters 18, 19; Gen. Stat. 1915, chapters 17-20.) Cities still have that power except where they have been stripped of it by the public utilities act. (Laws 1911, ch. 238; § 40, Gen. Stat. 1915, § 8368; *Humphrey v. City of Pratt*, 93 Kan. 413, 418, 144 Pac. 197.) And where the utility service is furnished wholly or principally within one city, the power of control is expressly reserved to the city. (§§ 3 and 33, public utilities act.) If the local utility company and the city come to loggerheads, then the public utilities commission may take jurisdiction by a proceeding somewhat in the nature of an appeal or right of review. (Laws 1911, ch. 238, § 33, Gen. Stat. 1915, § 8361.)

Counsel for the public utilities commission contend that section 20 of the public utilities act (Gen. Stat. 1915, § 8347) has the effect of extending the duration of the plaintiff's contract of 1906, because the rates, service, etc., in vogue on January 1, 1911, may not be changed without the consent of the public utilities commission. Section 8347 reads:

"Whenever any common carrier or public utility governed by the provisions of this act shall desire to make any change in any rate, joint rate, toll, charge or classification or schedule of charges, or in any rule or regulation or practice pertaining to the service or rates of any such public utility or common carrier, such public utility or common carrier

shall file with the public utilities commission a schedule showing the changes desired to be made and put in force by such public utility or common carrier, and such changes shall be plainly indicated by proper reference marks in amendments or supplements to existing tariffs, schedules or classifications, or in new issues thereof. No change shall be made in any rate, toll, charge or classification or schedule of charges, joint rates, or in any rule or regulation or practice pertaining to the service or rates of any such public utility or common carrier, without the consent of the commission, and within thirty days after such changes have been authorized by said public utilities commission, then copies of all tariffs, schedules, and classifications, and all rules and regulations, shall be filed in every station, office or depot of every such public utility and every common carrier in this state, for public inspection."

Another pertinent section reads:

"SEC. 30. Unless the commission shall otherwise order, it shall be unlawful for any common carrier or public utility governed by the provisions of this act within this state to demand, collect or receive a greater compensation for any service than the charge fixed on the lowest schedule of rates for the same services on the 1st day of January, 1911." (Gen. Stat. 1915, § 8358.)

The plaintiff's service in the city of Scammon was pursuant to a contract which had the approval of the city, and that contract was to endure for ten years. The public utilities act did not modify that contract, it did not impair it, it did not extend it. It does not seem necessary to enter the very debatable field as to whether, if so construed, the act would violate section 10 of the federal constitution. The court is familiar with the doctrine that the *contract* and *due process* clauses of the federal constitution are not violated by legislative interference with the contract rights of public service corporations, where that interference is based upon a just and rational exercise of the police power of the state; and state regulations abrogating the discriminatory or extortionate features of prior contracts of public service corporations usually fall within that principle. (*Chicago &c. Railroad v. Nebraska*, 170 U. S. 57; *Louisville & Nashville R. R. v. Mottley*, 219 U. S. 467; *Portland Ry. Co. v. Oregon R. R. Comm.*, 229 U. S. 397; *Milwaukee Elec. Ry. v. Wisconsin R. R. Comm.*, 238 U. S. 174; *Pinney & Boyle Co. v. L. A. Gas, etc., Corp.*, 168 Cal. 12, 141, Pac. 620, L. R. A. 1915C, 282, and note; *Raymond Lumber Co. v. Raymond L. & W. Co.*, 92 Wash. 330, 159 Pac. 133, L. R. A. 1917C, 574; *Benwood v. Pub. Serv. Commission*, 75 W. Va. 127, L. R. A. 1915C, 261, and note.)

None of the decided cases, however, goes so far as to hold that the police power will justify an arbitrary extension of the duration of a public service company's contract—to change it, for example, from ten years' duration to fifteen or twenty years' duration or to indefinitely extend it. (*Paul Smith's Hotel Co. v. Mountain Home Teleph. Co.*, P. U. R. [N. Y.] 1916C, 78.) In *Bewick v. Alpena Harbor Co.*, 39 Mich. 700, a statute was considered which gave three years additional life to corporations whose charters had expired or had been forfeited. Chief Justice Campbell said:

"Chapter 130 (§ 3435) of the Compiled Laws provides that corporations whose charters shall expire by their own limitation, or shall be annulled by forfeiture or otherwise, shall nevertheless continue to be bodies corporate for the term of three years after the time when they would have been so dissolved, for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their concerns, to dispose of and convey their property and to divide their capital stock; but not for the purpose of continuing the business for which such corporations have been or may be established." (p. 704.)

A critical examination of another case cited by appellees, *In re Consolidated Gas Co.*, 106 N. Y. Supp. 407, and of the case referred to in that opinion, *Miner v. N. Y. C. & H. R. R. R. Co.*, 123 N. Y. 242, takes nothing from this view. (See, also, *Krutz v. Paola Town Co.*, 20 Kan. 397.) General legislation extending such contracts or corporate charters or franchises may be valid as grants of corporate power, but to be both valid and binding upon the corporations the grants of power must be accepted by the latter, formally or by acquiescence or estoppel.

One phase of this question was lately before this court. In *City of Wilson v. Electric Light Co.*, ante, p. 425, 166 Pac. 512, a public service corporation which had enjoyed a franchise from the city for fifteen years refused to remove its poles and wires from the city streets when its franchise term expired. It insisted that the public utilities act forbade it to remove its poles, etc., and forbade it to change its utility service without the consent of the public utilities commission; and that the older statutes conferring authority upon the city to regulate and govern matters of this sort were superseded and impliedly repealed by the public utilities act. In analyzing the

Street Lighting Co. v. Utilities Commission.

pertinent provisions of the act, Chief Justice Johnston, speaking for the court, said:

"But none of these provisions nor anything contained in the act hints at a legislative purpose to give the commission authority to impose a franchise upon the people of a city, whether willing or unwilling, nor to reanimate a franchise that has expired. It can no more grant or renew a franchise than it can create a corporation or vest a foreign corporation with authority to do business in the state. . . .

"The same may be said of *City of Scammon v. Gas Co.*, 98 Kan. 812; 160 Pac. 316, also cited by defendants. In that case the gas company had been granted a franchise to furnish gas to others, and under the grant it had laid pipes and delivered gas to consumers. It ceased to supply the gas as it was required to do under the franchise and its contract, and it was held that the matter of restoring and continuing the service was within the jurisdiction of the public utilities commission. A wholly different controversy would have been presented if the gas company had entered the city without a franchise and the question had arisen whether the mayor and council of the city or the public utilities commission had the control of the streets of Scammon, or whether the commission could revive a franchise that had expired. . . . No express repeal of the statute giving the authority to cities has been discovered and we think none is implied." (pp. 428-430.)

The corollary to the city of Wilson's case is the one at bar. If a public service corporation may not tarry in a city after its franchise has expired, it can not be compelled to tarry after its contract of service has expired. / And since it is under no further corporate duty, there is nothing to prevent it from entering into a new contract or acquiring a new or different franchise, nor can any possible harm arise from this, for an unfair contract between the city and the utility company may be corrected either by the initiative and referendum of the electors or by appeal to the public utilities commission (§ 33, utilities act) or by both of these correctives. It can not be that the legislature intended to burden the state commission in the first instance with the myriad public service matters of purely local concern which continually arise in all the half thousand cities of this state. It would not be humanly possible for the commission to attend to them, to say nothing of the more important concerns for the regulation of which the commission was created.

The further reflection given to this case reassures the court that its memorandum decision handed down in July was correct, and it is adhered to. Rehearing denied.