No. 21,601.

*In re* CHARLES WRIGHT, Petitioner.

SYLLLABUS BY THE COURT.

INTERURBAN RAILWAY—*Local Service within City Limits—Control of Utilities Commission—Arrest under Void Ordinance—Habeas Corpus.* The Union Traction Company operates an interurban line some ninety miles in length from Nowata, Okla., into and through Coffeyville, Independence, Cherryvale and Parsons in this state, all under one management and from one power house. Over certain branch tracks in the city of Independence are operated four cars for local service, at least one of which is also operated over about three miles of its main track. The petitioner was arrested for violating a city ordinance requiring these local cars to run to a given point on the main-line track at specified times. *Held,* that the power to make this requirement rests exclusively with the public utilities commission.

Original proceeding in habeas corpus. Opinion filed January 12, 1918. Writ allowed.

*John J. Jones,* of Chanute, and *Chester Stevens,* of Independence, for the petitioner.

*Walter L. McVey,* of Independence, for the respondents.

The opinion of the court was delivered by

WEST, J.: The Union Traction Company operates an interurban car line from Nowata, Okla., into and through Coffeyville, Independence, Cherryvale and Parsons in this state, and a city line in the city of Independence and a city line in Coffeyville, all directed by the same officers. The local service in Independence covers 4.75 miles of branch tracks, and 3.3 miles of the main-line track, the local cars being four in number.

The petitioner was arrested for violating an ordinance of Independence requiring the company to operate these local cars to a certain place and at certain intervals, and claims that his restraint is unlawful because of the invalidity of such ordinance, his theory being that the public utilities commission and not the city has sole control over the operation of the traction company's cars. This is the only question in the case.

In 1906 the city of Independence passed ordinance No. 496, granting to the company—

"A franchise to construct, equip, maintain and operate an Interurban

Electric Railway and Power Plant for manufacturing, furnishing and distributing light, heat and power, and for the transportation of passengers and the carrying of freight, mail and express within, through, over and along the streets and alleys and public places in the City of Independence, Kansas, and for operating such Interurban Railway and Power Plant and defining the duties, rights and privileges hereunder."

This ordinance required, among other things, that the tracks should be laid a certain way, of specified material; that the poles should be set in a manner therein indicated, and kept painted; and restrictions were made as to the hanging of the wires and the equipping of the railway; the city reserving the right "to reasonably regulate by ordinance the speed of cars within the limits of said city." The company was required within thirty days to file with the city clerk its acceptance in writing of the provisions of the ordinance, duly acknowledged, and to execute a bond in the sum of $500 to secure the construction and completion of the road within the time named in the ordinance. In 1910 the city adopted a resolution reciting that the company had filed in writing its election to extend its line of interurban railway to or near certain industries near the city, and had asked the mayor and commissioners to agree with it as to what streets or portions thereof it might use on which to extend its line of interurban railway accordingly, and reciting a certain agreement as to this matter, and then proceeding to the effect that the company might use certain streets therein named for such purpose—

"over and across which to build, construct and extend its line of interurban railway, the same to be built, constructed and operated under and be subject to all the terms and conditions of ordinance No. 496."

The company operates its line, running through the cities mentioned, as a unit, the main office being at Coffeyville, Kan., and the power plant at Independence, which supplies the power for all the properties of the company. The Independence service here involved is entirely over the interurban line, with the same track, trolley poles, and power. The entire length of line, including sidings and switches and the like, is over 90 miles. The local cars do not make connections with the interurban cars. The bookkeeping of the interurban and local lines is done with the same books and as a part of the same system, but separate accounts are kept. The electrical

engineer testified that in the operation no. separate statement
of his time is made touching the city service separate and apart
from that of the interurban service.   He was asked whether if
the company should operate a car every thirty minutes from
the power house in Independence to the city park that would
interfere with the city service in Coffeyville, and he answered
that the system is so arranged that if more load is had than
can be carried the parts of it can be disconnected.

"In fact it will automatically be disconnected temporarily, and in that
case the cars in one town might operate and the other cars might be
operating under very weak power.   Or in case of line trouble down this
way every car in Coffeyville might be entirely stopped and the cars
might be running at normal in Independence."

Section 1674 of the General Statutes of 1915 authorizes
cities of the second class—

"to make all contracts, and do all other acts in relation to the property
and affairs of the city necessary to the exercise of its corporate or ad-
ministrative powers."

Cities are also empowered to enact all such ordinances, rules
and regulations not inconsistent with the laws of the state as
may be expedient for maintaining the peace, good govern-
ment, and welfare of the city and its trade and commerce.
(Gen. Stat. 1915, § 1704.)

Section 825 of the General Statutes of 1915 gives cities of
the three classes power to issue bonds "for the purpose of pur-
chasing, constructing or extending  .  .  .   heating or street-
railway or telephone service."

Section 836 empowers all incorporated cities "into or
through which any interurban railroad may have heretofore
been built, or into, or through which any interurban railroad
may propose to build a line of interurban railroad," to grant
franchises "upon such terms and conditions as such city may
by ordinance prescribe."   This was enacted in 1915, and hence
was not in force when the franchise in this case was granted,
but is quoted from to indicate the present powers of the city.

Section 8330 defines "common carriers" to include all street
railroads, suburban or interurban railroads, and all persons
and associations of persons operating such agencies for public
use in the conveyance of persons or property within this state.

Section 8368 (§ 40 of the utilities act) is as follows:

"The rights and remedies given by this act shall be construed as cumulative of all other laws in force in this state relating to common carriers and public utilities, and shall not repeal any other remedies or rights now existing in this state for the enforcement of the duties and obligations of public utilities and common carriers or the rights of the public utilities commission to regulate and control the same except where inconsistent with the provisions of this act."

Section 8369 (§ 41 of the utilities act) reads:

"The provisions of this act and all grants of power, authority and jurisdiction herein made to the commissioners, shall be liberally construed, and all incidental powers necessary to carry into effect the provisions of this act are hereby expressly granted to and conferred upon the commissioners."

These are admonitions to give full practical effect both to the new law and to the old and to construe each liberally and impartially.

The provisions of the public utilities act indicate an intention to clothe the commission with general supervisory powers over the operation of an enterprise like that of the traction company.

Section 8329 (§ 3 of the utilities act) reads:

"The power and authority to control and regulate all public utilities and common carriers situated and operated wholly or principally within any city or principally operated for the benefit of such city or its people, shall be vested exclusively in such city, subject only to the right to apply for relief to said public utilities commission as hereinafter provided in section 33 of this act."

Section 8361 (§ 33 of the utilities act) provides that—

"Every municipal council or commission shall have the power and authority, subject to any law in force at the time, to contract with any public utility or common carrier, situated and operated wholly or principally within any city or principally operated for the benefit of such city or its people, by ordinance or resolution, duly considered and regularly adopted: (1) As to the quality and character of each kind of product or service to be furnished or rendered by any public utility or common carrier, and the maximum rates and charges to be paid therefor to the public utility or common carrier furnishing such product or service within said municipality, and the terms and conditions, not inconsistent with this act or any law in force at the time under which such public utility or common carrier may be permitted to occupy the streets, highways or other public property within such municipality. (2) To require and permit any public utility or common carrier to make such additions or extensions to its physical plant as may be reasonable and necessary for

the benefit of the public, and may designate the location and nature of such additions and extensions at the time within which such shall be completed, and the terms and conditions under which the same shall be constructed."

This section further provides that upon complaint being made that the ordinance or resolution of such city is unreasonable the public utilities commission shall act as a sort of appeal board, and unless its recommendations are followed may proceed in court in the name of the state to set aside such ordinance or resolution—

"because of its unreasonableness or illegality, or because the same is not for the promotion of the welfare and best interests of said municipality. . . ."

Other features of the legislative situation are well set forth by Mr. Justice Dawson in *Street Lighting Co. v. Utilities Commission,* 101 Kan. 774, 169 Pac. 205.

At a comparatively recent period it was bitterly complained that public service corporations controlled the municipalities, but the foregoing steps in the progress of legislation demonstrate that the state and its municipalities now control these corporations. The seemingly practical arrangement has been made by the legislature, in accordance with the doctrine of home rule, that local affairs shall be under the control of local officers, but that utilities which are not principally confined in their operations to a given municipality shall be under the supervision of the state commission, and, as indicated, in certain cases of local friction the state commission acts first in a sort of appellate capacity, and then next, if necessary, as advocate for the complainants by a proceeding in court. The property here directly involved is in a physical sense purely an interurban road. It is physically impossible to separate or divide the track itself into one for local and another for through purposes. There is no question that for all through purposes the property and its operation come within the exclusive jurisdiction of the state board. It is equally clear that these local cars must be operated so as not to impair, impede, or destroy the through service.

Let it be understood that nothing is intended or attempted to be decided now except the sole question as to whether the refusal of the traction company to comply with the ordinance

is within the exclusive jurisdiction of the city commission or that of the public utilities commission. No question affecting the local branch lines is before us.

Giving to all the legislation involved the liberal construction expressly required, and following the familiar rule to give each portion thereof its intended meaning, the conclusion is reached, and the court holds, that the failure of the traction company to comply with the ordinance touching the times and place at and to which the cars in question shall be operated over the main-line track is one within the exclusive jurisdiction of the public utilities commission.

The petitioner having been convicted on the theory that the city commission was the one having sole jurisdiction, it follows that his retention is unlawful, and the writ is granted.