No. 34,209

THE STATE OF KANSAS, ex rel. CLARENCE V. BECK, Attorney General, *Plaintiff,* v. THE CITY OF KANSAS CITY; DON C. McCOMBS, as Mayor-Commissioner; H. F. SCHAIBLE, as Commissioner of Boulevards, Parks and Streets; and GEORGE T. DARBY, as Commissioner of Finance, Health and Public Property, *Defendants.*

(86 P. 2d 476)

Opinion filed January 28, 1939.

*Clarence V. Beck,* attorney general, and *Theo F. Varner,* assistant attorney general, for the plaintiff.

*Alton H. Skinner,* city attorney, *Joseph A. Lynch,* deputy city attorney, *A. L. Berger, E. S. McAnany, James L. Hogin* and *Donald Corson,* all of Kansas City, for the defendants.

*C. W. Trickett,* of Kansas City, as *amicus curiae.*

The opinion of the court was delivered by

DAWSON, C. J.: The state filed quo warranto proceedings against Kansas City and its officials, challenging their right to exercise certain corporate powers in relation to the further industrial development of certain municipal property, earlier phases of which are already chronicled in our reports. (*Kansas City v. Wyandotte County,* 117 Kan. 141, 230 Pac. 79; *State, ex rel., v. Kansas City,* 140 Kan. 471, 37 P. 2d 18; *Robertson v. Kansas City,* 143 Kan. 726, 56 P. 2d 1032.)

The legal questions of present concern arose last November, and a prompt decision thereon was urgently desired on account of a tendered grant of federal funds in aid of the projected improvements which had to be accepted, if at all, by a fixed date, and it was only to be available if the procedural steps had the authoritative

sanction of this court. In part, this action is to procure a declaratory judgment, and this court regards it as such, and as authorized by statute (G. S. 1935, 60-3127).

The cause was heard as soon as counsel for the state and the city could present it. The court gave judgment for the city, accompanied by a *per curiam* opinion for whatever immediate light on our decision it might give. (*State, ex rel., v. Kansas City*, 148 Kan. 623, 84 P. 2d 409.) Our present more formal opinion has had to await our convenience in its preparation. Such disposition of cases of pressing public concern is not altogether without precedent. (*Street Lighting Co. v. Utilities Commission*, 101 Kan. 438, 166 Pac. 514; Id., 101 Kan. 774, 169 Pac. 205.)

In this case it appears that the defendant city and its governing body have set about the establishment of a wholesale fruit and vegetable terminal market on the municipal levee. To that end they determined to issue certain bonds, the proceeds of which should be used, in part, to retire certain outstanding levee bonds heretofore issued by the city; the remainder to be used in conjunction with a federal grant of funds for the construction and extension of the existing facilities of the public levee and to enlarge its present terminals.

The statutes cited by the city to authorize its questioned powers are G. S. 1935, 12-672; 13-1239 to 13-1243; 13-1245; G. S. 1937 Supp. 13-1238 and 13-1244. The ordinances of the city enacted pursuant to these provisions of statute are No. 30206, approved November 1, 1938, and No. 30239, amending sections 7 and 13 of No. 30206, effective on some subsequent date not shown.

By these ordinances a $4,000,000 bond issue is authorized to be designated "public levee terminal revenue bonds," of which a sale of only $3,000,000 of this issue is now contemplated. The estimated cost of the proposed improvements is $3,799,035. The conditions of the federal grant required, among other matters, that work on the improvement had to be commenced within nine weeks from October 24, 1938; and noncompliance therewith would defeat the grant.

In the state's petition for a judgment in quo warranto, the attorney general raised pertinent legal questions requiring an authoritative adjudication before the city and its officials and all concerned could safely proceed with the important undertakings contemplated. A solicitous concern for the protection of the taxpayers of Kansas City is manifested by the attorney general and by an *amicus curiae*

who also submitted a brief. This solicitude is commendable, and so we shall take up seriatim the questions raised by the state.

The statutory authority under which the city assumes to exercise the challenged powers is chapter 43 of the Laws of 1933, Special Session, as amended by chapter 135, Laws of 1937 (G. S. 1937 Supp. 13-1238 *et seq.*). The constitutionality of the act of 1933 has already been vindicated by this court. (*State, ex rel., v. Kansas City,* 140 Kan. 471, 37 P. 2d 18.) The question now raised is whether this statute as amended violates that part of section 5 of article 12 of the state constitution which provides that the powers conferred on cities by law "shall be so restricted as to prevent the abuse of such power."

This provision has been the subject of judicial exposition ever since the foundation of the state. It scarcely states a rule of constitutional law that a court can lay hold of. It is largely admonitory and was intended by the framers of our constitution to be addressed to the wisdom and conscience of the legislative branch of our state government. (*Hines et al. v. City of Leavenworth et al.,* 3 Kan. 186, 203-204; *City of Newton v. Atchison,* 31 Kan. 151, 1 Pac. 288; *Wulf v. Kansas City,* 77 Kan. 358, 362, 94 Pac. 207; *State v. Keener,* 78 Kan. 649, 651, 97 Pac. 860; *State, ex rel., v. Kansas City,* 125 Kan. 88, 90, 262 Pac. 1032.)

Speaking of this clause of the constitution in *Hines et al. v. City of Leavenworth et al.,* supra, Mr. Chief Justice Crozier said:

"It is not a subject proper for judicial cognizance but belongs to another tribunal. It would involve the exercise of a discretion that the framers of the constitution never intended should be deposited in any court. It would in effect constitute the court a lawmaker rather than a law expounder. When a law is passed embracing any of the subjects mentioned in the fifth section, it is the duty of the court, when called upon, to determine whether it contains restrictions, and if it does contain them the law must be held to be valid, notwithstanding the members of the court might doubt their sufficiency to prevent abuses. It is a subject wholly under the control of the political department of the government. Whatever the legislature determines to be a sufficient restriction, if it be a restriction at all, must be final." (p. 203.)

An examination of the statute under which the challenged proceedings are being undertaken will reveal a number of restrictions which the legislature must have deemed sufficient to prevent the defendant city from abusing the corporate powers vested in it, and the legislative wisdom on this subject is not open to judicial review.

It is next urged that ordinance No. 30206 which the city has

adopted has the legal effect of a contract by the city and its officials to pledge the general credit of the city to the performance of the contract. If by pledging "the general credit of the city" counsel mean to suggest that such a pledging, if breached, might eventually result in a liability which would have to be satisfied out of the revenues of the city raised by general taxation, we must say that such a suggestion is groundless. Nothing can be more clear, nothing can be more emphatic, than the language of section 13 of the ordinance, which provides:

"That nothing herein or in this ordinance contained shall be construed as imposing on said city any obligation to levy any taxes to pay the principal of or interest on said revenue bonds."

This provision of the ordinance is in strict accord with the statute which repeatedly declares:

"Revenue bonds, as the term is used in this act, are defined to be bonds issued by any such city in this state to be paid exclusively from the revenue produced by the property and facilities improved, constructed, reconstructed, repaired or otherwise improved by the use of the proceeds of said bonds. Such revenue bonds shall not be general obligations of the city . . . " (G. S. 1935, 13-1239.)

"Said revenue bonds shall not constitute in any case, a general obligation of such city. . . ." (G. S. 1935, 13-1240.)

In the form of bond prescribed by ordinance No. 30239 the city's obligation is stated and limited thus:

"This bond and the interest hereon are payable solely from the money and revenue received by said city from the fees charged and rental received for the use of the property and facilities improved, constructed, reconstructed, repaired or otherwise improved by the proceeds, in whole or in part, of the revenue bonds of said city, issued or to be issued as aforesaid, and from the revenues of the public levee and the facilities connected therewith, together with the revenues from any improvements and extensions to the public levee, and not from any other fund or source. *This bond shall not be or constitute a general obligation of said city of Kansas City, Kansas."* (Italics ours.)

We went into this question carefully in *State, ex rel., v. Kansas City,* 140 Kan. 471, 476-477, 37 P. 2d 18, and it seems superfluous to repeat or amplify what was there set down. Nothing in ordinance No. 30206, or in the statutes which authorize it, is susceptible of an interpretation that the city's present proceedings to establish a terminal market may at some future time subject the city to a liability which will have to be satisfied out of its revenues raised by general taxation. Not under this city ordinance, not under existing statutes,

can such liability be incurred. While it is measurably true that a city necessarily has implied power to do what may be required to effectuate an exercise of its granted powers (*Kansas Power Co. v. Fairbanks, Morse & Co.,* 142 Kan. 109, 45 P. 2d 872), no judicial rule for construing contracts, ordinances or statutes could be countenanced which would read by implication into any such writing a construction at downright variance with its express terms. Here the ordinance and the bonds issued pursuant to it will bind the city and its officials to maintain the improvements in good repair and to conduct the terminal market in an efficient manner and to do and perform the specified and incidental details pertaining thereto—but only to the extent that the revenues derived directly or indirectly from the improvements will permit. A failure or breach of the city's obligations in respect to this improvement will no more reach into the general revenue fund of the city of Kansas City for satisfaction thereof than it will into the general revenue fund of the state itself.

The practice of issuing municipal obligations to be paid out of anticipated revenues of business ventures undertaken by a municipality under authority of statute, but which in no event are to become a burden to the generality of the city's taxpayers nor to be paid out of city revenues raised by general taxation, is a practice which has become rather common. Many courts have had to be concerned with the subject. In *Kirby v. Omaha Bridge Commission,* 127 Neb. 382, 392, 255 N. W. 776, the question for decision concerned the validity of a proposed issue of $1,650,000 of revenue bonds of the city of Omaha to raise funds to erect a bridge across the Missouri river, which were to be payable solely out of the anticipated revenues derived from toll charges for the use of the bridge. One of the objections to the issue was that the tolls would be insufficient to pay the bonds and interest, that the result would be the imposition of a general liability on the city to pay such bonded indebtedness. Neither the district court nor the supreme court took any stock in that objection. In a well-considered opinion supported by a mass of pertinent citations, the court said:

"It will be remembered that this record discloses that the intent and purpose of the city of Omaha, as appears from all proceedings taken or proposed, are that the principal and interest of the bonds issued to finance the construction of the proposed bridge shall be payable solely from the special funds created by the charging of tolls to the users of the bridge, and that the city shall and thereby does create no indebtedness of any kind or nature,

and to support which the city shall not and does not pledge its taxing power nor any part thereof. This is within its statutory powers expressly granted. These terms, conditions and limitations will expressly appear on the face of the 'revenue bonds' it proposes to issue and sell. In fact, in the absence of an authorization by the electorate, it is limited by the terms of the statute to the restricted action it proposes to take. Obviously, what is created is not a general obligation of the city, nor can the burden on the taxpayers be in any manner affected thereby. (Citations.)" (p. 392.)

The next point urged is that the ordinance authorizes a bond issue in excess of the statutory limit. The authorized issue is $4,000,000, but only $3,000,000 of that amount is intended to be sold. Of that amount, $1,054,000 is to be used to redeem the same amount of an earlier issue already outstanding. This will leave available for the projected improvements the sum of $1,946,000, the estimated cost of which is $3,799,035. The amount of the expected federal grant cannot be precisely stated at present, but the federal authority (PWA) has signified its willingness to contribute 45 percent of the cost, which contribution, however, is not to exceed $1,710,000.

It seems to us that the objection to the suggested amount of the bond issue, $4,000,000, is a mere talking point, since there is no present intention to issue that amount. This court can hardly be expected to oust the city and its officials from the exercise of powers they have no intention of exercising. There may be some practical advantage to the city in taking certain preliminary procedural steps leading up to a bond issue for a larger amount than there is a present actual need to issue. (*State, ex rel., v. City of Topeka,* 141 Kan. 309, 41 P. 2d 260.) Be that as it may, section 4 of ordinance No. 30206 expressly governs and limits the amount of the issue with which we are presently concerned. It reads, in part, thus:

"That the city of Kansas City, Kansas, shall forthwith issue and there are hereby issued public levee terminal revenue bonds of the city of Kansas City, Kansas, in the aggregate principal amount of $3,000,000."

Section 12 of the same ordinance, in part, reads:

"That the city of Kansas City, Kansas, hereby covenants and agrees that the $1,000,000 principal amount of public levee terminal revenue bonds of said city heretofore authorized but not being presently issued, and each and every part of said $1,000,000 principal amount of said bonds, shall be issued hereafter only under all of the conditions and in accordance with all of the provisions hereinafter specified, to wit:

"(a) Said bonds shall not be issued in excess of the actual cost of making improvements, additions and extension to the public levee of said city and facilities thereon or connected therewith, authorized by law."

In *City of Oswego v. Davis*, 97 Kan. 371, 154 Pac. 1124, the validity of a proposed bond issue "not exceeding thirty thousand dollars" was questioned—one objection being the uncertainty of the proposed issue. In sustaining the procedural steps leading up to the proposed issue, we said:

"It has never been held that where a positive and exact amount of bonds has been authorized by the electors that the municipality must issue that exact sum. When once the issue has been authorized by the people, every prudent municipal government strives to keep the expenditures well below the maximum amount authorized." (p. 374.)

Careful consideration of all the matters urged by the state leads us to the conclusion that the city and its officials are proceeding in strict accord with the authority conferred by statute, and that judgment should be rendered in their behalf.

Judgment is for defendants.