No. 19,626.

J. A. HUMPHREY, *Appellant,* v. THE BOARD OF COMMIS-
SIONERS OF THE CITY OF PRATT et al., *Appellees.*

SYLLABUS BY THE COURT.

1. CITY COMMISSIONER — *Guilty of Malfeasance — Exercising
Functions of Office—De Facto Officer—Act Legal—Collat-
eral Attack.* A commissioner of a city of the second class
who is guilty of malfeasance which, under section 1 of chap-
ter 111 of the Laws of 1911, *ipso facto* vacates his office, but
who continues in possession of the office and exercises its
functions as if he were a rightful incumbent, with the knowl-
edge and acquiescence of the people of the city and the law
officers of the state, is a commissioner *de facto* whose ca-
pacity to act in calling a bond election can not be questioned
in a collateral action by a taxpayer to enjoin the issuance
and sale of bonds authorized by the election.

2. CITY ORDINANCE—*Bond Election—Information Not Required
to be Stated in Ordinance.* A city ordinance calling a bond
election and the election proclamation need not contain in-
formation for the guidance of voters not required by statute,
and an issue of bonds to build a municipal light plant, author-
ized at a city election, can not be enjoined because the ordi-
nance and proclamation did not state that the proposed bonds
would be paid by taxation.

3. CITY BONDS—*Municipal Light Plant—Election—False Rep-
resentations by Agitators—Injunction Refused.* The issu-
ance of bonds voted at a city election to build a municipal
light plant can not be enjoined because the election was car-
ried by false representations by agitators as to the public
plight resulting from the relations between the city and a
private corporation then supplying the city with electric
light.

4. CITY ELECTRIC LIGHT PLANT—*Not a "Public Utility" Under
the Statute.* Section 31 of the public utilities act (Laws 1911,
ch. 238), providing that no public utility shall transact busi-
ness until it shall have obtained a certificate from the public
utilities commission that the public convenience will be pro-
moted does not apply to a public utility, such as an electric
light plant, owned and operated by a municipality.

5. CITY ORDINANCE—*Referendum Provisions Not Repealed by
"Public Utilities" Law of 1911.* Section 33 of the public

utilities act, providing for a review by the public utilities commission of franchise ordinances passed by municipal councils or commissions, does not amend or repeal the referendum provision of the act relating to cities of the second class having a commission form of government (Gen. Stat. 1909, § 1504), and an ordinance contracting with a private corporation for electric light, which upon protest duly made is not repealed and upon submission to a vote does not receive the approval of a majority of the electors, does not become operative.

6. CITIES—*Franchise to Private Electric Light Plant—City May Construct and Operate a City Light Plant.* A city which has not limited or extinguished it lawful power to make further provision for lighting its streets and public places and supplying its inhabitants with electric light by the terms of a franchise granted to a private corporation may construct and operate an electric light plant of its own for the purposes stated without violating the obligation of its contract.

Appeal from Pratt district court; PRESTON B. GILLETT, judge. Opinion filed November 14, 1914. Affirmed.

*A. C. Malloy,* of Hutchinson, for the appellant.

*W. B. Hess,* of Pratt, and *Frank L. Martin,* of Hutchinson, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action is one commenced by a taxpayer of the city of Pratt, a city of the second class having a commission form of government, to enjoin the board of commissioners from issuing and selling bonds, authorized at an election held for the purpose, to provide funds for constructing and equipping a municipal light plant. A demurrer was sustained to the petition, and the plaintiff appeals.

The petition charges, in substance, that in the year 1913 the board of commissioners, then composed of J. K. Hupp, L. D. Hess, and O. H. Boch, violated the statute which reads as follows:

"Any member of the board of commissioners who shall vote for or in any manner aid or promote the

passage or adoption of any ordinance, legislation or other act of said board creating an indebtedness or drawing any order or warrant on the treasury in payment of any indebtedness which exceeds the amount of funds actually on hand in the treasury at the time for such purpose, or where the levy has not actually been made and in the process of collection or where provision has been made for the issuance of bonds, shall thereby be guilty of malfeasance in office, and such action shall, *ipso facto,* vacate his office and he shall be liable on his official bond for such malfeasance." (Laws 1911, ch. 111, § 1.)

At the election in 1914 R. Calbeck was chosen to succeed Boch. Hupp then resigned. Calbeck and Hess filled the vacancy by the appointment of W. O. Humphries. The board of commissioners so constituted called the election. It is claimed that Hess was disqualified to join in the appointment of Humphries, with the result that both Hess and Humphries were disqualified to join in calling the election.

In this state the *de facto* doctrine, as applied to the conduct of persons acting as public officials, is recognized to the fullest extent. (*The State v. Williams,* 61 Kan. 739, 60 Pac. 1050; *In re Corum,* 62 Kan. 271, 62 Pac. 661; *Railway Co. v. Preston,* 63 Kan. 819, 66 Pac. 1050; *The State v. Miller,* 71 Kan. 491, 80 Pac. 947; *Briggs v. Voss,* 73 Kan. 418, 85 Pac. 571; *Mikesell v. Wilson County,* 82 Kan. 502, 505, 108 Pac. 829; and authorities cited in these opinions.)

Hess holds under his original title and under circumstances calculated to induce the public to believe that he is still a member of the board of commissioners. Humphries holds by virtue of a known appointment, apparently valid and accepted by the public as valid. Being in possession of the offices and ostensibly exercising their functions lawfully, with the knowledge and acquiescence of the people of the city of Pratt and of the law officers of the state, they will be deemed to be what they appear to be, namely, rightful incumbents.

The forfeiture pronounced by the statute quoted is not more disqualifying than various forms of incapacity to act considered in the cases cited, and the plaintiff will not be permitted to frame an issue based upon such forfeiture in this collateral proceeding.

Complaint is made that the ordinance calling the election and the election proclamation did not state, for the information of the voters, how the bonds were to be paid, that is, by taxation. The ordinance and proclamation contained all the enlightenment the statute requires, and the district court could not defeat the bonds because provisions which the legislature did not deem essential were not inserted.

Further complaint is made because the bond election was carried through false representations by agitators as to the public plight resulting from the relations between the city and the Pratt Light & Ice Company, a private corporation then supplying the city and its inhabitants with light. Unscrupulous campaign methods must be met in some other way than by an action to enjoin issuance and sale of the bonds.

The plaintiff insists that the city can not issue bonds to construct and equip an electric light plant until it complies with section 31 of the public utilities act of 1911, which reads as follows:

"No common carrier or public utility governed by the provisions of this act shall transact business in the state of Kansas until it shall have obtained a certificate from the Public Utilities Commission that public convenience will be promoted by the transaction of said business and permitting said applicants to transact the business of a common carrier or public utility in this state. This section shall not apply to any common carrier or public utility governed by the provisions of this act now transacting business in this state." (Laws 1911, ch. 238, § 31.)

Without determining what is meant by the phrase, "transact business in this state," it is sufficient to say that the public utilities act does not apply to the enterprise contemplated by the city of Pratt.

"Provided that this act shall not refer to or include mutual telephone companies. That mutual telephone companies, for the purposes of this act, shall be understood to mean any coöperative telephone company operating only for the mutual benefit of its subscribers without profit other than in the service received. Nothing in this act shall apply to any public utility in this state owned and operated by any municipality." (Laws 1911, ch. 238, § 3.)

The plaintiff desires the court to impose upon this statute a limitation, neither expressed by or implied from its terms, restricting its application to public utilities owned and operated by any municipality at the time the law took effect. The argument is that competition may be as destructive to private and public welfare as monopoly, and that the judgment and permission of an unbiased administrative board are just as essential when a municipal corporation is about to undertake the construction and operation of a light plant as when a private corporation desires to do so. Conceding this argument to be economically sound, it should be addressed to the legislature which indisputably disregarded it by the plain and unambiguous exclusion from the definition of "public utilities" of public utilities owned and operated by municipalities. To strain the definition to include municipally owned utilities brought into being subsequent to the enactment of the statute would be to amend the law and not to interpret it.

In 1905 the city granted to the Pratt Light & Ice Company a franchise to construct and operate an electric light plant in the city for the purpose of supplying the city and its inhabitants with electric current for a period of twenty years. In June, 1913, the board of commissioners undertook by ordinance to change this franchise and to partially supplant it with a new one. Upon a referendum to the electors of the city the ordinance failed to receive a majority of the votes cast and consequently failed to become operative. (Gen.

27—93 KAN.

Stat. 1909, § 1504.) It is claimed that the city is bound by the ordinance of 1913, in which the Pratt Light & Ice Company aquiesced, notwithstanding the referendum, the argument being that the sole remedy, if the ordinance were undesirable, was by complaint to the public utilities commission by ten or more taxpayers of the city in accordance with section 33 of the public utilities act.

The public utilities act does not in terms amend or repeal the commission government act. There is no inconsistency between the two, and hence no basis upon which to rest an implied repeal. On the other hand, the clear indications are that the public utilities act was designed to be cumulative and supplemental to the earlier one. Under the commission government act electors, who need not be taxpayers, have ten days after the passage of an ordinance in which to protest against it and in this way to require a reconsideration of the ordinance by the board of commissioners, and if it be not entirely repealed to require its submission to a vote of the people for acceptance or rejection. Such a protest raises the question whether or not there shall be an ordinance at all. If, however, no protest be filed within ten days, taxpayers have five days more, or fifteen days from the passage of the ordinance, in which to complain to the public utilities commission and thereby secure changes in particular features, or in case of utter illegality, unreasonableness, or antagonism to the public welfare, to have the entire ordinance set aside. There being no uncertainty in the language employed, no conflict or contradiction in terms, no resulting incongruity or absurdity, and no resulting evil or injustice, the conclusion must be that the legislature intended both acts to stand as the expression of its will.

In view of what has just been said, arguments for the relief which the plaintiff seeks depending upon the present existence of the ordinance of 1913 need not be examined.

Humphrey v. City of Pratt.

There is no claim that the city limited or exhausted its power to make further provision for lighting its streets and public places and supplying its inhabitants with light by anything contained in the franchise granted to the Pratt Light & Ice Company in 1905, and no foundation for such a claim is disclosed by the record. There is, therefore, no constitutional objection to the exercise by the city of its statutory authority to construct and operate an electric light plant of its own for the purposes stated.

Whatever obligation the city may now be under to take and pay for electric current from the light company remains unimpaired. The obligation of a contract consists in its binding force according to the standards of law in existence when it was made (Cooley's Constitutional Limitations, 7th ed., p. 403), and the building of a light plant of its own by the city does not affect to diminish any legal duty which it may owe the private company. The breach of a binding contract and the violation of the obligation of a contract are distinct things. It will not be assumed in advance that the plaintiff will default in the observance of its contracts. Should it do so the aggrieved party, not this plaintiff, will have its remedy. Neither will it be assumed that the city will exercise its power to fix the rates and regulate the service of the private company oppressively or unjustly. If it should do so the private company has its remedy by complaint to the public utilities commission. The wisdom of the city's course is not open to judicial inquiry, and the law leaves the private company to meet fair competition on the part of the city as it would the competition of another private company which might lawfully secure a franchise and authority to transact business.

The judgment of the district court is affirmed.