614

No. 33,477

THE KANSAS GAS AND ELECTRIC COMPANY, *Appellee*, v. THE CITY OF MCPHERSON et al., *Appellants*.

(72 P. 2d 985)

Opinion filed November 6, 1937.

*S. C. Bloss,* of Winfield, *Claude I. Depew,* of Wichita, and *J. R. Rhoades,* of McPherson, for the appellants.

*Robert O. Mason, James L. Galle, James A. Cassler, L. H. Ruppenthal,* all of McPherson, *Thomas E. Wagstaff, Jay W. Scovel,* both of Independence, *H. L. McCune* and *Blatchford Downing,* both of Kansas City, Mo., for the appellee.

*William Drennan, Otto Ziegelmeyer, Charles W. Lowder,* all of Kansas City, *Charles L. Hunt, Frank C. Baldwin* and *Charles A. Walsh,* all of Concordia, as *amici curiae.*

The opinion of the court was delivered by

HARVEY, J.: This action was brought to enjoin defendant from extending its electric transmission lines to the city of Moundridge and supplying electric energy to that city and vicinity. After a hearing on the merits the trial court enjoined the defendant from extending its transmission lines to and supplying electric energy to the city of Moundridge and vicinity "unless and until" defendant "shall obtain

a certificate of public convenience and necessity from the corporation commission of the state." Defendant has appealed, contending it is not required by statute to obtain such a certificate. Plaintiff has cross-appealed, contending the injunction should have been granted without qualification.

The facts may be summarized briefly as follows: Plaintiff is incorporated under the laws of West Virginia and is authorized to do business in Kansas. Its business consists of producing, transmitting and selling electric energy. To conduct that business it has a large investment in this state. It had obtained from the state corporation commission a certificate of convenience and necessity so as to enable it to supply Moundridge and vicinity, and many other places, with electric energy. In January, 1922, it entered into a contract with the governing body of the city of Moundridge, which had its own electric distribution system, to supply electricity at the city gates to the city, for it to distribute over its distribution system, most of which was within the city. Provisions of the contract authorized plaintiff to supply electricity directly to consumers in the city using more than a stated quantity, and also to supply consumers in the vicinity of Moundridge. By its terms this contract was to continue in force until July 1, 1936, and thereafter from year to year until canceled by either party, which could be done by giving 60 days' notice in writing. The city of Moundridge served this notice, terminating the contract July 1, 1936; but pending the outcome of this action plaintiff is supplying the city of Moundridge with electricity under the terms of the contract and orders of the court. Moundridge has a population of 875, is using 325 meters in its distribution system, and during 1935 used 366,540 K.W.H. from plaintiff, and paid therefor the sum of $6,444.40. Plaintiff has a transmission line approximately seventeen miles in length, extending from Newton in Harvey county to Moundridge, with which it supplies that city and one additional customer therein, and the towns of Hesston in Harvey county and Goessel in Marion county, an oil field east of Moundridge, and nine rural customers in McPherson county, south and east of Moundridge.

The city of McPherson, in McPherson county, is a city of the second class, with a commission form of government. It has owned and operated a municipal electric plant since 1909, and has had rural transmission lines extending into the surrounding trade territory since 1918, northeast, southwest and southeast of the city. The

line extending southeast toward Moundridge, about seventeen miles, has been serving rural customers north and west of Moundridge since 1921, and in that year defendant had a substation within the corporate limits of Moundridge, but furnished no current to customers within the corporate limits. In 1934 and 1935, at an expense of about $245,000, defendant rebuilt and enlarged its generating plant in order to take care of the growing demands of its customers, both within and without the city. Plans were prepared for the reconstruction of many of its existing lines and the construction of new lines. One of these was a 12,000-volt, three-phase line along U. S. highway 81 from the town of Elyria to within about a mile and a half of Moundridge, which line, except for the stringing of wires on eight poles about midway between the two towns, had been completed at the time of the hearing. This was a reconstruction and extension of a previously existing line, and is the same type as other lines extending in other directions from the city of McPherson. Plaintiff makes no claim that defendant is planning to supply current to any of plaintiff's customers other than Moundridge, which has canceled its contract with plaintiff, as it had a right to do. The total cost of this rural electrification program is between $120,000 and $135,000 and involves the construction and reconstruction of about 198 miles of transmission lines to serve about 493 customers, none of whom is served by plaintiff. This was financed by a bond issue, a PWA grant, and current revenues.

In February, 1936, the city of McPherson obtained from the corporation commission an order approving the location and type of construction of the lines. No certificate of convenience and necessity was obtained from the corporation commission, or applied for. In April, 1936, a contract was entered into by the governing bodies of the cities of McPherson and Moundridge by which the city of Moundridge was to buy its electric energy from the city of McPherson for a term beginning July 1, 1936. Soon thereafter, and on May 8, 1936, this action was filed. Plaintiff is not a taxpayer of the city of McPherson and does not rely upon its status as such for its right or authority to maintain this action, but does rely upon the theory that it is threatened with unfair competition by acts of the city of McPherson unauthorized by law. Defendant questions the right of plaintiff to maintain this action, but we pass that question, for the reason that in an effort to eliminate it at the time of the argument in this court it was suggested the question

might be eliminated if the state, through its attorney general, would then intervene in the action; and this was done. Without determining the effect of this upon all of the details argued by counsel it seems clear the case is before us for our determination of the principal questions presented.

We turn now to the legal questions argued. Is the city of McPherson required by law to obtain a certificate of convenience and necessity from the corporation commission of the state before it can extend its electric transmission lines into territory outside of the corporate limits of the city? The first statute we had requiring any public utility to procure such a certificate was enacted in 1911 (Laws 1911, ch. 238). Prior to that time utility companies, such as plaintiff, extended lines into territory or not as their managing officers determined it was advisable to do so for business reasons. The general purpose of this statute was to place public utilities not municipally owned and operated under the supervision of the state, acting through its corporation commission, or similar regulatory bodies, in a manner similar to the supervision which the state previously had exercised over railroads. In some respects it was framed after the Interstate Commerce Commission Act of Congress. This act of 1911, with some amendments or modifications not here important, continues to be the law of this state. (G. S. 1935, 66-101, *et seq.*) It contained within it (§ 3) the provision:

"Nothing in this act shall apply to any public utility in this state owned and operated by any municipality." (G. S. 1935, 66-104.)

Section 31 of the act provided that no public utility governed by the provisions of the act could transact business in the state until it had obtained a certificate of convenience from the Public Utilities Commission. Soon after this statute was enacted these provisions came before the court for consideration in *Humphrey v. City of Pratt*, 93 Kan. 413 (1914), 144 Pac. 197. It was there held:

"Section 31 of the public utilities act (Laws 1911, ch. 238), providing that no public utility shall transact business until it shall have obtained a certificate from the public utilities commission that the public convenience will be promoted, does not apply to a public utility, such as an electric light plant, owned and operated by a municipality." (Syl. ¶ 4.)

In the opinion the pertinent provisions of the sections of the statute were quoted, and it was said:

"Without determining what is meant by the phrase 'transact business in this state,' it is sufficient to say that the public utilities act does not apply to the enterprise contemplated by the city of Pratt." (p. 416.)

And on page 417 the court summarized the argument made by the private utility in that case—much of the same character as plaintiff makes here—and refused to follow it on the ground that to do so the court in effect would be amending the statute.

So plain was the provision that nothing in the utilities act should apply to any public utility owned and operated by any municipality of the state that the question did not arise again in this court until the case of *Holton Creamery Co. v. Brown,* 137 Kan. 418 (1933), 20 P. 2d 503, where a question of authority to fix rates was involved. In discussing that question the court referred to the utilities statute of 1911 and its amendments, and said:

"That statute specifically provides: 'Nothing in this act shall apply to any public utility in this state owned and operated by any municipality. . . .' (R. S. 66-104). The plain language of the statute just quoted apparently has been so generally understood that this court hitherto has not been called upon to consider it, although it was incidentally before us in *Humphrey v. City of Pratt,* 93 Kan. 413, 144 Pac. 197, where it was decided that it was not necessary for the city to obtain a certificate of convenience and necessity from the public utilities commission as prescribed by section 31 of the act (R. S. 66-131) before the city could set about the construction of a municipal light plant." (p. 421.)

The question was specifically raised before this court in *Board of Public Utilities v. Kansas City P. & L. Co.,* 139 Kan. 842 (1934), 33 P. 2d 320, where it was held:

"The official board of public utilities of Kansas City does not require a certificate of convenience from the state corporation commission to authorize it to extend the transmission lines of the municipal light and power plant beyond the corporate limits of the city and to supply its services to customers outside the city."

Again the court quoted, among other things, the provision in section 3 of the utilities act of 1911:

"Nothing in this act shall apply to any public utility in this state owned and operated by any municipality." (p. 844.)

And with respect to that, and a similar provision concerning mutual telephone companies, it was said:

"Those of us whose memories go back far enough and remain clear enough to recall the sharp controversies which attended the advocacy of the utilities act can understand how necessary to its enactment was the legislative assurance in section 3 that *some* public utilities were to be wholly excluded from its control, to wit, mutual telephone companies and municipally owned utilities, and that even the power to regulate and control privately owned utilities serving wholly or principally one city should be vested *exclusively* in the city government with only a limited review vested in the state commission." (p. 845.)

This opinion was written by our present chief justice, who in 1911 was attorney general and personally assisted in drafting the utilities act (Laws 1911, ch. 238) and in advocating its enactment. In *West Missouri Power Co. v. City of Washington,* 80 F. 2d 420, construing our statute, it was held:.

"City is not required to obtain certificate of convenience and necessity before installing municipal light and power plant."

With respect to the fairness of that provision plaintiff argues that competition by utilities municipally owned may be fully as objectionable and disastrous as competition by utilities privately owned. This is the same argument made by the privately owned utility in the Humphrey case in 1914, in the City of Holton case in 1933, and in the Board of Utilities case in 1934. In each of these cases this court in effect said that even if the argument should be conceded to be sound it is one which should be addressed to the legislature rather than to the court. We know of no better answer to make now to the argument.

Plaintiff contends the provision of the utilities act that nothing therein shall apply to any utility owned and operated by any municipality, is unconstitutional and void in that it violates the anti-discrimination provision of the fourteenth amendment, United States Constitution, by denying to plaintiff the equal protection of the laws of the state. On this point plaintiff cites and chiefly relies on *Frost v. Corporation Commission,* 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483. We have carefully considered this case and find it not to be in point. For a reason which will appear later herein an extended analysis of that case will not be necessary. The constitutionality of this provision of our utilities act was raised in the pleadings and argued in the briefs in *Board of Public Utilities v. Kansas City P. & L. Co.,* supra, and considered by the court, which treated the question in the opinion as having no substantial merit. Plaintiff contends, however, that the anti-discrimination provision of the fourteenth amendment was not specifically raised in that case. This contention is hardly accurate. But, passing that, what are the discriminatory provisions of the utilities act (Laws 1911, ch. 238) which make it unconstitutional? It was an act for the regulation of public utilities other than mutual telephone companies and any utility owned and operated by any municipality. It provided for the regulation of utilities covered by the act. It did not provide for the regulation of utilities not covered by the act, namely, those

owned and operated by any municipality. Other statutes place the regulation of such utilities in the governing bodies of the respective municipalities. Having placed the regulation of municipally owned and operated utilities in the municipalities, this utilities act (Laws 1911, ch. 238) was enacted for the regulation of privately owned public utilities. If the legislature had no power or authority to pass such an act, then, of course, the entire act is void, and no public utility would be required to get a certificate of convenience and necessity from the corporation commission, for it is the only statute requiring it. But that construction would not be agreeable to plaintiff, at least as far as its present argument is concerned, for then it would have no basis to say that it had any priority of right. It is section 31 of that act (G. S. 1935, 66-131) on which plaintiff predicates that argument; hence it is essential that section remain in force before plaintiff can have any foundation to make this argument. That is the section under which plaintiff got its certificate of convenience to serve Moundridge, which, by the way, it procured after the city of McPherson had a transmission line to Moundridge and a substation within the city. Really, plaintiff seeks to rely upon the part of the statute it deems favorable to it, and to have adjudged invalid the part it deems unfavorable to it. We cannot so hold. Respecting the point here involved, the statute as a whole must stand or fall. There is a presumption the statute would not have been enacted by the legislature without the provisions therein that it should not apply to mutual telephone companies, or to any utility owned and operated by any municipality. (*Frost v. Corporation Commission*, supra.) Here, in addition to the presumption, that fact has been judicially noticed. (*Board of Public Utilities v. Kansas City P. & L. Co.*, supra, p. 845.) The fact that the statute pertains only to privately owned public utilities, and excludes from its provisions municipally owned and operated public utilities, is not such a discrimination as invalidates the act. (*Springfield Gas Co. v. Springfield*, 257 U. S. 66, 42 S. Ct. 24, 66 L. Ed. 131. See, also, *Yamhill Elec. Co. v. City of McMinnville*, 130 Ore. 309, 274 Pac. 118, and cases there cited.) If the provision in the act that it did not apply to mutual telephone companies, or to any utility owned and operated by any municipality, makes a classification invalid under the fourteenth amendment, the result would be that the entire act would be void (*Frost v. Corporation Commission*, supra) and plaintiff would gain nothing from such a holding. The trial

court was in error in holding the city was under the duty of obtaining a certificate of convenience and necessity from the state corporation commission.

Plaintiff, by its cross-appeal, contends that a second-class city, such as the city of McPherson, has no authority to extend its lines seventeen miles to the city of Moundridge for the purpose of supplying that city and its inhabitants, and those living in the immediate vicinity of that city, with electricity. Note is taken of G. S. 1935, 12-821, which confers upon any city operating a power and lighting plant the authority to extend its transmission lines within or without the city, and plaintiff concedes the city may extend its lines to serve customers near the city; but it is argued that does not authorize the extension of lines as far as seventeen miles to another city, there to serve it and customers in its immediate vicinity. It is not argued the state, through its legislature, does not have power to grant such authority to cities; the contention is that it has not done so. We have considered with care the unusually able briefs of plaintiff and of *amici curiae* in support of this contention and are unable to agree with them. It is true, as plaintiff contends, municipal corporations are creatures of the law and have only such authority as is conferred upon them by statute. (*State, ex rel., v. City of Coffeyville,* 127 Kan. 663, 274 Pac. 258.) But the wording of our statutes places no such limitation upon the authority of a municipality owning and operating an electric plant, as plaintiff contends exists. Really, the argument is that there is an implied limitation upon the express authority granted. That reasoning is difficult to follow. It is also true, as argued by plaintiff, that the general policy of this state throughout its history has been and is for its municipalities and other subdivisions of the state to perform governmental functions, or at the most what may be referred to as quasi-governmental functions, and that it is contrary to such public policy for the subdivisions of the state to go into business generally in competition with private capital. (*State, ex rel., v. Kaw Valley Drainage District,* 126 Kan. 43, 267 Pac. 31.) With respect, however, to utilities furnishing such things as water, gas and electricity, a different public policy has grown up, namely, that these be furnished, or may be furnished, by municipalities. This has developed in part at least from necessity; that is to say, privately owned public utilities were not available in many localities, and the people of the cities and of rural districts were unable to have the benefit of such things unless

they could be furnished by municipalities. This was noticed and commented upon in the opinion of the court by Mr. Justice Burch in *Municipal Power Transmission Co. v. City of Lyndon,* 127 Kan. 59, at pages 64 to 66, 272 Pac. 158. It was there pointed out that as early as 1903 cities were given authority to purchase or produce and to sell natural gas, and that in 1911 this authority was extended so as to include electricity, and it was said:

"The statute, being a remedial public-welfare statute having a purpose beyond the mere government of an incorporated city, is to be liberally construed." (p. 66.)

Our statutes conferring authority upon municipalities with respect to utilities owned or operated by them have varied provisions, but generally speaking, and to the extent they deal with the question, the authority is conferred to extend lines or pipes outside the city and serve customers there, as well as to make such extensions and furnish such service within the city. For a partial list of these statutes bearing on this question see G. S. 1935, 12-801, 12-804, 12-806, 12-808, 12-817, 12-821, 12-831 and 12-842. Those which confer authority to extend lines or mains outside the city have no express limitations as to the distance outside the city electric lines may be extended. Neither do they have any limitation with respect to the class of consumers, whether individuals, partnerships, or public or private corporations, who may be served. We realize sometimes hardships may result where cities extend their lines into territory wholly or partially served by a privately owned utility of the same kind. In *Board of Public Utilities v. Kansas City P. & L. Co.,* 139 Kan. 842, 847, 33 P. 2d 320, we had occasion to comment on that subject; but it was held that fact would not justify this court in saying the city-owned and operated utility did not have the authority the legislature granted to it. A similar situation exists in this case. However, we note the record shows plaintiff serves only nine rural consumers of electricity in McPherson county, while defendant is serving, or has contracts to serve, 493 such customers. Possibly this indicates that electric energy is more readily available to rural consumers where the utility furnishing it is owned and operated by a municipality than by a private individual or corporation. Whether cities owning or operating an electric utility should be authorized to extend transmission lines and sell electricity to consumers outside the city without a limitation being placed on the distance such lines can be extended, or the class of consumers to

whom sales can be made, is a question of statecraft to be determined by the legislature, not by the courts.

Plaintiff argues that if the city of McPherson desired to supply the city of Moundridge with electricity it would have to do so at its own city gates; that it had no authority to build a transmission line to Moundridge; that the city of Moundridge might build a transmission line to the city of McPherson and there receive its electricity. That kind of an arrangement was shown to exist in *City of Holton v. Kansas Power & Light Co.*, 135 Kan. 58, 9 P. 2d 675. We see no reason for this distinction. The fact that this kind of an arrangement was made between the city of Holton and some other cities does not determine the fact that it has to be done that way. We see nothing in the statute requiring it. The point raised by plaintiff on its cross-appeal is not well taken.

The judgment of the court below is reversed with directions to set aside the injunction granted and to render judgment for defendant.