No. 44,965

THE KANSAS PUBLIC SERVICE COMPANY, INC., a Corporation, *Appellant*, v. STATE CORPORATION COMMISSION OF KANSAS: William L. Mitchell, Chairman; James O. Greenleaf, and Harry G. Wiles, as members of said Commission, and their respective successors in office, and UNION GAS SYSTEM, INC., a Corporation, *Appellees*.

(433 P. 2d 572)

Opinion filed November 13, 1967.

*Olin K. Petefish,* of Lawrence, and *Richard C. Byrd,* of Ottawa, argued the cause, and *James L. Postma* and *Peter K. Curran,* of Lawrence, and *Robert A. Anderson,* of Ottawa, were with them on the brief for appellant.

*E. Edward Johnson,* general counsel for the State Corporation Commission, *Donald S. Hults,* of Lawrence, and *Blake A. Williamson,* of Kansas City, argued the cause, and *Jeff A. Robertson,* of Topeka, was with them on the brief for appellees.

The opinion of the court was delivered by

FATZER, J.: The appellant, Kansas Public Service Company, Inc., has appealed from the judgment of the district court of Douglas County sustaining an order of the State Corporation Commission

which certified territory immediately adjacent to the city of Lawrence, Kansas, to the appellee, Union Gas System, Inc., to transact the business of a gas public utility. The area certified was territory served in part by the appellant.

For the purpose of brevity, Kansas Public Service Company, Inc., is hereafter referred to as appellant or Public Service; Union Gas System, Inc., is hereafter referred to as appellee or Union Gas, and the State Corporation Commission is hereafter referred to as the Commission.

Public Service is a Kansas corporation with its offices located in the city of Lawrence, and operates as a one-city gas public utility pursuant to K. S. A. 66-104 and 12-2001, *Fifth*. It is engaged in the distribution of natural gas at retail within the city and the territory immediately adjoining such city pursuant to a franchise granted by the city on May 18, 1964, and an amended gas line extension policy approved by the city governing body on August 25, 1965.

Union Gas is a Kansas corporation with its offices located in the city of Independence, Kansas, and is engaged in the distribution of natural gas in the state of Kansas pursuant to certificates of convenience and necessity previously issued by the Commission. On March 23, 1965, Union Gas filed its application with the Commission for a certificate of convenience and necessity to transact business as a gas public utility in Leavenworth, Jefferson, Wyandotte, Johnson and Douglas Counties. The application was docketed No. 76,160-U, and notice of the hearing on the application was published in daily newspapers in Leavenworth, Douglas and Johnson Counties. None of the territory sought in the application had previously been certified by the Commission to Union Gas or to any public utility for natural gas service.

The territory covered by the application was primarily rural, but did include certain third class cities and unincorporated rural communities. It also included territories surrounding and in close proximity to the cities of Lawrence, Leavenworth and Tonganoxie. Other public utilities under the jurisdiction and regulation of the Commission, which operated in or adjoining or in close proximity to the territory for which Union Gas sought certificates of convenience and necessity, were alleged to be the Gas Service Company, Kansas City, Missouri; The Greeley Gas Company, Denver, Colorado, and the Kansas Power & Light Company, Topeka, Kansas.

On July 21, 1965, Gas Service Company (docket No. 76,951-U), and The Greeley Gas Company (docket No. 76,952-U), and on July 23, 1965, the Kansas Power & Light Company (docket No. 76,963-U), respectively, filed applications to intervene, and each filed an application for a certificate of convenience and authority to transact the business of a public utility in certain areas in the five Kansas counties.

On July 31, 1965, Public Service filed its petition with the Commission for leave to intervene in the hearing on the application of Union Gas. The petition did not seek affirmative relief, but alleged that Public Service was exempt from the jurisdiction of the Commission by virtue of K. S. A. 66-104 and was regulated by and was under the jurisdiction of the city of Lawrence and had filed rates and rules and regulations which had been approved by the governing body; that the areas for which Union Gas sought a certificate of convenience and authority surrounding the city of Lawrence encroached upon and overlapped areas in which it had provided service for many years in accordance with its franchise with the city of Lawrence; that the granting of the application of Union Gas would adversely affect its interest and deprive it of the benefits of investments theretofore made in the city and the territory immediately adjoining such city, and that it had at all times been willing to extend its distribution systems to provide service to additional customers in such territory, in accordance with rules and regulations on file with and approved by the governing body of the city. It was further alleged that the granting of the application of Union Gas would not be in the public interest in that the authorization to Union Gas to provide service within the areas adjoining the city could inevitably deprive future customers the opportunity of obtaining natural gas service from the most readily available source at the lowest cost; that the granting of the application of Union Gas would deprive it of valuable property rights without due process of law, and that the representation of its interest by existing parties was inadequate. The prayer was that it be permitted to intervene and become a party to the proceedings so as to protect its interests.

At the commencement of the hearing before the Commission on August 2, 1965, the petition of Public Service, together with the applications of the three named public utilities to intervene in the consolidated hearing, was granted by the Commission. Evidence was introduced in the consolidated record by all of the public

utilities on August 2, and 3, 1965, and October 6, and 7, 1965, and the record was closed.

On October 20, 1965, the Commission issued separate orders on behalf of each public utility applicant. In docket No. 76,160-U it issued its order granting in part and denying in part the application and issued its certificate of convenience and authority certifying to Union Gas not only the territory covered by its application but also certified additional territory between that requested in the application and the city limits of Lawrence, which additional territory was immediately adjacent to the city limits. Omitting the caption and the lengthy meets and bounds description of the territory certified, the Certificate and Order reads:

"This matter is before the Commission on application of Union Gas System, Inc., filed on the 23rd day of March, 1965. Proper notice was given and the matter was set for hearing and partially heard on April 27, 1965, and continued. This matter was on motion by and agreement of counsel consolidated for hearing purposes and heard upon a common record with Docket No. 76,951-U, being the application of The Gas Service Company, filed July 21, 1965; Docket No. 76,952-U, being the application of Greeley Gas Company, filed July 21, 1965; and Docket No. 76,963-U, being the application of The Kansas Power and Light Company, filed July 23, 1965. All of said applications were for certificates of Convenience and Authority to transact the business of a public utility in certain areas of Wyandotte, Leavenworth, Jefferson, Douglas, and Johnson Counties, Kansas.

"The consolidated hearing was held in the hearing room of the Commission, State Office Building, Topeka, Kansas, on August 2 and 3, 1965, and October 6 and 7, 1965.

"At the beginning of the hearing on August 2, 1965, applications for intervention which had been filed were heard and action taken by the Commission as follows:

"Applications of Greeley Gas Company, Gas Service Company, Kansas Public Service Company, and The Kansas Power and Light Company, to intervene in the consolidated hearing were granted.

"Thereupon evidence was introduced in behalf of all applications into a consolidated record, and the record closed. The Commission, having carefully considered the record and being fully advised in the premises, finds that separate orders should be made by the Commission in each of the dockets which were consolidated for hearing purposes.

"And, the Commission finds in the instant captioned matter of the application of Union Gas System, Inc., as follows:

"1. That the application should be granted in part and denied in part and a certificate of Convenience and Authority issued to applicant to serve as a gas public utility in the following described territory:

(Description omitted.)

"2. That the corridors described in Finding No. 2 of the Certificate and Order being issued this date in Docket No. 76,951-U (Gas Service Company)

are therein determined to be non-exclusive and this Applicant should be authorized to serve there as specified in Finding No. 3 of said Certificate and Order. The said Certificate and Order in Docket No. 76,951-U are incorporated herein and made a part hereof by reference.

"3. That at the present time there is a matter before the Commission, being Docket No. 76,757-U for interpretation and clarification of certificate authority relating to certain areas of Kansas. The instant certificate is not determinative in any regard to the issues involved in said docket.

"4. That Kansas Public Service Company, Inc., is a one-city utility and by statute K. S. A. 66-104 is exempt from the jurisdiction of this Commission and that the certificate herein granted to Union Gas System, Inc., is not in any manner a determination of the authority of Kansas Public Service Company, Inc., to serve as a utility in any given area.

"5. That the construction of the transmission and distribution systems required to serve the towns of Easton, Lowemont and Kickapoo and along said transmission lines will require an investment substantially in excess of the amount Applicant would ordinarily make under its rate schedules and rules and regulations and Applicant should be permitted to file and place in effect higher rates as an aid in construction in said areas, in accordance with established procedures for determination of rates.

"6. That public convenience will be promoted by permitting Applicant to transact the business of a gas public utility in the territory described in Finding No. 1 herein, and the application issued in accordance with the provisions of K. S. A. 1963, 66-131.

"IT IS, THEREFORE, BY THE COMMISSION CONSIDERED AND CERTIFIED:

"That the application in the instant docket be, and it hereby is, granted in part and denied in part and Union Gas System, Inc., be, and it hereby is, permitted to transact the business of a gas public utility in the territory described in Finding No. 1 herein.

"IT IS FURTHER BY THE COMMISSION ORDERED:

"That Union Gas System, Inc., be, and it hereby is, permitted to operate as a gas public utility within the non-exclusive corridors described in Finding No. 2 in Docket No. 76,951-U, as specified in Finding No. 3 of said Certificate and Order.

"IT IS FURTHER BY THE COMMISSION ORDERED:

"That Union Gas System, Inc., be, and it hereby is, permitted to file and place in effect appropriate rates for service subject to provisions set forth in Finding No. 5 herein.

"The Commission retains jurisdiction of the subject matter and parties for the purpose of entering such further order or orders as it may deem necessary."

On November 29, 1965, the appellant, Public Service, filed its application for rehearing pursuant to Rules of Practice and Procedure of the Commission. On December 1, 1965, the Commission granted a special rehearing, limited to the boundary lines of the certified area adjacent to and abutting the city limits of the city of Lawrence, and the rehearing was held on January 19, 1966.

On March 16, 1966, the Commission entered its order on rehearing. It eliminated the additional territory between that requested in the application and the city limits which was immediately adjacent and contiguous to the city, and established the final territorial boundary lines to cover the territory requested in Union Gas' original application, which territory was from one-fourth to one-half mile beyond the city limits of the city of Lawrence. In all other respects, the Commission's order of October 20, 1965, was affirmed.

On April 15, 1966, Public Service filed its application for judicial review in the district court of Douglas County and also filed its motion to stay the orders issued by the Commission on October 20, 1965, and March 16, 1966. Union Gas filed its motion to intervene as respondent in the district court and also filed motions to dismiss the motion for a stay order and to dismiss application for judicial review.

On June 2, 1966, the district court, in a memorandum opinion, found that the respective motions of Union Gas to dismiss the appeal and Public Service's motion for a stay order should be overruled.

On July 15, 1966, the district court found the order of the Commission under review to be lawful and reasonable and entered judgment sustaining the order (K. S. A. 66-118j). Thereafter, the appellant timely perfected this appeal.

Public Service first contends the district court erred in sustaining the order of the Commission for the reason the order was unlawful because it failed to comply with law with respect to judicial review, and with the Commission's own rules in that it (1) did not contain a summary of the allegations and contentions of the parties; (2) did not contain a summary of the evidence, and (3) did not contain basic "findings of fact" and "conclusions of law." The point is well taken.

The Commission has adopted Rules of Practice and Procedure relating to all proceedings before the Commission and filed the same with the Revisor of Statutes pursuant to K. S. A. 1965 Supp. 77-415, *et seq.* The purpose of those rules was to assist the Commission as it defines the public interest and serves the citizens of the state. Rule No. 82-1-232 provides that formal decisions of the Commission shall be stated in written documents entitled "Orders," and subsection (*a*) prescribes the form and content of such orders, and reads:

"Each order of the commission shall contain the caption and docket number of the proceeding in which the order is issued. The body of the order shall recite the appearances of attorneys of record for the parties, *the date and place of the hearing or hearings, a summary of the allegations and contentions of the applicant (or the complainant or the petitioner), a summary of the evidence introduced by the applicant (or the complainant or the petitioner), a summary of all other evidence, a section entitled 'findings of facts' listing all facts found by the commission to be true, a section entitled 'conclusions of law' containing legal conclusions of the commission, and the directive or mandate of the commission, stated in concise and mandatory language.* The order shall bear the signature of the secretary and the seal of the commission. The surnames of the commissioners who participated in the making of the order shall be typed at the end of the order. The date of mailing to the parties of the order shall be shown below the secretary's signature." (Emphasis supplied.)

In *State, ex rel., v. Columbia Pictures Corporation,* 197 Kan. 448, 417 P. 2d 255, it was held that rules and regulations adopted by an administrative board to carry out a policy declared by the Legislature, have the force and effect of law. (Syl. ¶3.) Rules adopted by the Commission to assist it to define the public interest and to serve the citizens of the state by prescribing orderly practice and procedure relating to all proceedings before the Commission, carry out the policy declared by the Legislature, and have the force and effect of law.

Did the Commission's order in the instant case comply with its own rules? It is obvious that, from a consideration of the order issued on October 20, 1965, as well as the order on rehearing, the Commission did not comply with Rule No. 82-1-232 (*a*). There is nothing in the challenged order of October 20, 1965, that purports to contain a summary of the contentions of the parties, neither does it contain a summary of the evidence introduced by the various public utilities, including the appellant, nor does it contain basic findings of fact or conclusions of law. On its face, the order is in violation of Rule No. 82-1-232 (*a*). At most, paragraph No. 6 of the order is a finding of ultimate fact expressed in the language of the statute (K. S. A. 66-131), that the public convenience will be promoted by permitting Union Gas to transact the business of a gas public utility in the territory described. An ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact. (*Helvering v. Tex-Penn Co.,* 300 U. S. 481, 491, 81 L. Ed. 755, 57 S. Ct. 569.) Such an ultimate finding is not enough, in the absence of basic findings to support it. This court must first know what the basic findings are before it can give them conclusive

weight. We have repeatedly emphasized the need for clarity and completeness in basic or essential findings on which the administrative orders rest, and findings based on substantial evidence must embrace the basic findings which are needed to sustain the order. (*Central Kansas Power Co. v. State Corporation Commission,* 181 Kan. 817, 316 P. 2d 277; *Atchison, T. & S. F. Rly. Co. v. State Corporation Comm.,* 182 Kan. 603, 322 P. 2d 715; *Class I Rail Carriers v. State Corporation Commission,* 191 Kan. 201, 380 P. 2d 396; *Darnell Truck Service v. State Corporation Commission,* 194 Kan. 96, 397 P. 2d 385; *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 386 P. 2d 515.) In the latter case it was said:

"The findings of the Commission must be based upon facts. It must be possible for the reviewing court to measure the findings against the evidence from which they were educed. Findings not based on evidence, but on suspicion and conjecture, are arbitrary and baseless." (l. c. 47.)

Moreover, it is equally well settled that the lack of express findings of fact by an administrative agency may not be supplied by implication (*Atchison Ry. v. United States,* 295 U. S. 193, 79 L. Ed. 1382, 55 S. Ct. 748; *Burlington Truck Lines v. U. S.,* 371 U. S. 156, 9 L. Ed. 2d 207, 83 S. Ct. 239), and where express findings are required as a matter of procedural law in order to support an administrative determination, it may be stated as a general rule that courts will not search the record in order to ascertain whether there is evidence from which the ultimate finding could be made. (*Wichita R. R. v. Public Util. Comm.,* 260 U. S. 48, 67 L. Ed. 124, 43 S. Ct. 51; *Atchison Ry. v. United States,* supra.) Under our Public Utility Act (K. S. A. Ch. 66) it is the function of the Commission, and not of the court, to find the facts.

The reasons for requiring the findings of basic facts by an administrative agency are so powerful that the requirement has been imposed with undeviating uniformity by this court. The rationale of the rule as gleaned from the foregoing cases and others, is to facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative consideration to protect against careless and arbitrary action, assist the parties in planning their cases for rehearing and judicial review, and keep such agencies within their jurisdiction as prescribed by the Legislature. We do not mean to imply that the Commission's findings must be set forth with such minute particularity as to amount to a summation of all the evidence of record. We hold only that in a given case, and in this case particularly, the Commission must assume

the responsibility of expressing the basic facts on which it relies with sufficient specificity to convey to the parties, as well as to the courts, an adequate statement of the facts which persuaded the Commission to arrive at its decision. There must be findings on all applicable standards which govern the Commission's determination, and the findings must be expressed in language sufficiently definite and certain to constitute a valid basis for the order, otherwise the order cannot stand. (*Central Kansas Power Co. v. State Corporation Commission,* supra; *Burlington Truck Lines v. U. S.,* supra.)

In the instant case, what the Commission and apparently counsel for the Commission, and the district court, overlooked is this requirement of basic findings. What is here involved was spelled out in *Saginaw Broadcasting Co. v. Federal C. Com'n,* 96 F. 2d 554, cert. den. 305 U. S. 613, 83 L. Ed. 391, 59 S. Ct. 72, referred to as a leading case in a note in 146 A. L. R. 209, 220. Noting the necessity for findings of fact by administrative boards and commissions, the court said:

". . . When a decision is accompanied by findings of fact, the reviewing court can decide whether the decision reached by the court or commission follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence. In the absence of findings of fact the reviewing tribunal can determine neither of these things. The requirement of findings is thus far from a technicality. On the contrary, it is to insure against Star Chamber methods, to make certain that justice shall be administered according to facts and law. This is fully as important in respect to commissions as it is in respect to courts.

"In discussing the necessary content of findings of fact, it will be helpful to spell out the process which a commission properly follows in reaching a decision. The process necessarily includes at least four parts: (1) evidence must be taken and weighed, both as to its accuracy and credibility; (2) from attentive consideration of this evidence a determination of facts of a basic or underlying nature must be reached; (3) from these basic facts the ultimate facts, usually in the language of the statute, are to be inferred, or not, as the case may be; (4) from this finding the decision will follow by the application of the statutory criterion . . ." (p. 559.)

Not only does Rule No. 82-1-232 (*a*) require that the Commission make basic findings of fact to support its conclusions of law, but also that requirement has been imposed by this court to facilitate judicial review. As indicated, there is complete absence of any attempt to comply with that requirement in the challenged order, and, accordingly, it is unlawful and must be set aside.

Public Service argues that it is regulated in all respects by the

city of Lawrence and that, as a one-city gas public utility, it has the same standing before the law as any other public utility regulated and certified by the Commission.

Under the Utilities Act (Laws 1911, Ch. 238), the Commission was given full power, authority and jurisdiction to supervise and control all public utilities doing business in the state. (K. S. A. 66-101, 66-131.) While the Act was comprehensive in its scope, it specifically did not include within its provisions mutual telephone companies, public utilities owned and operated by municipalities and, subject to the right to apply to the Commission for relief as provided in 66-133, it vested the power to regulate privately owned public utilities as are situated and operated wholly or principally within any city for the benefit of such city or its people, exclusively in such city. (K. S. A. 66-104.)

Since the power to control and regulate "one-city" public utilities is vested exclusively in such city, except as provided in 66-133, such utility is exempt from applying to the Commission for a certificate of convenience and authority to do business in this state as provided in 66-131. While the specific question has not been previously decided by this court, our former decisions which bear upon the question, so far as they do relate to it, are regarded as being in harmony with the conclusion stated. (*Humphrey v. City of Pratt*, 93 Kan. 413, 144 Pac. 197; *Street Lighting Co. v. Utilities Commission*, 101 Kan. 438, 166 Pac. 514, 101 Kan. 774, 169 Pac. 205; *City of Hutchinson v. Hutchinson Gas Co.*, 125 Kan. 346, 264 Pac. 68; *Wichita Water Co. v. Public Service Commission*, 126 Kan. 381, 268 Pac. 89; *Board of Public Utilities v. Kansas City P. & L. Co.*, 139 Kan. 842, 33 P. 2d 320; *Kansas Gas & Elec. Co. v. City of McPherson*, 146 Kan. 614, 72 P. 2d 985.)

The crux of this litigation is the conflict between the jurisdiction of the Commission, as a regulatory body, to issue certificates of convenience to all public utilities doing business in this state, and the city of Lawrence, as a regulatory body, to control and regulate all public utilities, including Public Service, situated and operating wholly or principally within the city. The record manifests the Commission took the position that, since Public Service was a one-city gas public utility and exempt from its jurisdiction and was not certified as a regulated utility whereas Union Gas and the other public utility applicants were so certified, it need not afford Public Service the same consideration, with respect to territory immediately adjoining the limits of the city of Lawrence, as it was required

to give to any other regulated public utility, or give consideration to regulations of the city governing Public Service's operations. In sustaining the order, the district court took the same view.

The statute (66-104) relating to Public Service as a one-city utility reads, in part:

". . . The power and authority to control and regulate all public utilities and common carriers *situated and operated wholly or principally within any city or principally operated for the benefit of such city or its people, shall be vested exclusively in such city,* subject only to the right to apply for relief to the corporation commission as hereinafter provided in section 66-133 of the General Statutes of 1949. . . ." (Emphasis supplied.)

K. S. A. 66-133 referred to above authorizes the city to contract with a public utility situated and operated wholly or principally within any city or principally operated for the benefit of such city or its people by ordinance or resolution. Such authority includes the right to contract as to the kind of service to be rendered by the utility, the maximum rates and charges to be paid therefor, provides for the extensions to its physical plant necessary for the benefit of the public, and provides for a reasonable and lawful penalty for noncompliance with the provisions of any such ordinance.

On May 19, 1964, the city of Lawrence enacted an ordinance pursuant to K. S. A. 66-104 and 12-2001 by which it granted to Public Service a franchise for the distribution of natural gas within the city of Lawrence, and the territory immediately adjoining said city, and not within the boundaries of any other incorporated city, subject, however, to all conditions, specifications and limitations therein contained.

The franchise required Public Service to furnish gas to such person or persons who may make application for the same within the territory covered by its mains in the city of Lawrence, *and in the territory immediately adjoining the city,* and to pay the city five percent per annum of the gross receipts for gas sold during the term of the franchise.

K. S. A. 12-2001 relates to the granting of a franchise by ordinance to any person, firm or corporation, to supply, among other things, natural gas, and prescribes conditions upon which the franchise may be granted. The *Fifth* subsection reads, in part:

". . . Such fixed charge may consist of a percentage of the gross receipts derived from the service permitted by the grant, right, privilege or franchise from consumers or recipients of such service located within the corporate boundaries of such city, *and, in case of public utilities or common carriers*

*situated and operated wholly or principally within such city, or principally operated for the benefit of such city or its people, from consumers or recipients located in territory immediately adjoining such city and not within the boundaries of any other incorporated city . . ."* (Emphasis supplied.)

It is clear from the foregoing that, under the franchise of the city and the applicable statutes, Public Service was legally entitled to serve the territory immediately adjoining the city of Lawrence. The evidence showed that Public Service had been serving the territory immediately adjoining the city and meeting the requirements of the growth of the city for as long as it had been franchised. The evidence further showed the city of Lawrence was making a steady growth and that the city governing body had approved the gas line extension policy of Public Service.

While 12-2001 may be regarded in part as a revenue statute, nonetheless the *Fifth* subsection contains identical language as that in 66-104 with respect to one-city public utilities, and requires the utility to pay to the city, revenue derived from service to consumers or recipients "located in territory immediately adjoining such city and not within the boundaries of any other incorporated city." The corollary of the foregoing would seem to be that if the city may receive revenue from patrons of the utility located in territory immediately adjoining the city, there exists legislative intent, at least by implication, that the utility be permitted to extend its lines into such territory. Let it be understood that it is not necessary in this opinion nor do we intend or attempt to define what is "territory immediately adjoining such city."

As indicated, the Legislature has placed the power and authority to control and regulate all privately owned public utilities in two different regulatory bodies: one, the Commission, and the other, the city, in which a public utility serves wholly or principally therein and territory immediately adjoining such city, with a limited review vested in the Commission. With respect to the former, the Legislature empowered the Commission to supervise and control all public utilities and to issue certificates of convenience to transact their business in the state. In the same Act, however, the Legislature placed the control and regulation of all public utilities situated and operated wholly or principally within any city, exclusively in such city, subject to limited review by the Commission.

In *Street Lighting Co. v. Utilities Commission,* supra, a similar question was presented, and it was said:

"The cities of this state have always had the power to regulate and control their local public service corporations . . . Cities still have that power except where they have been stripped of it by the public utilities act. (Laws 1911, ch. 238, §40, Gen. Stat. 1915, §8368; *Humphrey v. City of Pratt*, 93 Kan. 413, 418, 144 Pac. 197.) And where the utility service is furnished wholly or principally within one city, the power of control is expressly reserved to the city. (§§3 and 33, public utilities act.) If the local utility company and the city come to loggerheads, then the public utilities commission may take jurisdiction by a proceeding somewhat in the nature of an appeal or right of review. (Laws. 1911, ch. 238, §33, Gen. Stat. 1915, §8361.)" (1. c. 778.)

It was further said:

". . . This court will always extend a very liberal interpretation of the public utilities act so as to give the public utilities commission effective use of its lawful powers over the utilities companies lawfully subject to its control. Even where it is strongly debatable whether the utility's business is or is not confined principally to one town or city, this court is inclined to resolve the doubt in favor of the commission's authority. (*The State, ex rel., v. Water Co.*, 92 Kan. 227, 231, 104 Pac. 103.) This is wisely so, because wherever the business of a public utility company extends outside the limits of one city, even in a relatively small degree, complications as to the control of that service are likely to arise, or such outside service may go unregulated altogether unless the supervision of the state commission is recognized. *But where the utility is subject to city control, and not to the state commission's control, the court's support of the city's powers must be just as liberal, so that the city may effectually exercise its governmental powers and discharge the duties entrusted to it by the legislature.*" (Emphasis supplied.) (1. c. 777.)

In the instant case, both regulatory bodies have issued authorization to different public utilities to serve the same territory. A city is a creature of the Legislature, the same as the Commission, which may exercise only such powers as the Legislature confers. The state gives, and the state can take away, but until the Legislature changes the policy of the regulation of "one-city" public utilities as are situated and operated wholly or principally within any city, the city's regulation of the utility is as lawful and exclusive as is the Commission's regulations of other public utilities doing business in the state.

Giving the Utilities Act a liberal interpretation with respect to the powers to be exercised by the city of Lawrence, its ordinance and extension policies may not be ignored by the Commission in the final determination of this controversy. (*Kansas Gas & Electric Co. v. Public Service Com.*, 122 Kan. 462, 466, 251 Pac. 1097.) Public Service is a public utility chartered under the laws of this state, and pursuant to valid regulation is performing the public service of

supplying natural gas within the city of Lawrence and in territory immediately adjoining the city. Where it is meeting the public needs in such territory, it has the right to insist that its rights be protected the same as any other public utility.

Other points have been raised, one of which needs to be discussed since it deals with procedure and practice before the Commission.

At the commencement of the presentation of evidence by Public Service before the Commission, Union Gas moved to prevent any testimony that would be offered by Public Service, as intervenor. The chairman of the Commission stated the motion would be taken under advisement, with direction to Public Service to proceed with the introduction of its evidence, at the conclusion of which the Commission would rule upon the motion, and that Union Gas would have the privilege of making a motion to strike all of such testimony, which, too, would be ruled upon.

During the presentation of its evidence, Public Service was permitted to offer evidence relating to the following exhibits, and Union Gas cross-examined in regard to them: Exhibit No. 11 (the city ordinance of May 19, 1964, granting Public Service its franchise), Exhibit No. 12 (Public Service's extension line policy, approved by the city when the franchise was granted), Exhibit No. 13 (the amendment to the extension line policy approved by the city), Exhibit No. 15 (a map showing the area within three miles of the city limits of Lawrence which Public Service was serving), and Exhibit No. 16 (a comparison of Public Service's rates in the territory immediately adjoining the city with the proposed rates of Union Gas). The exhibits were admitted over objection of Union Gas, with the chairman stating, "And you are preserving your motion to strike."

At the conclusion of the presentation of evidence by Public Service, Union Gas moved to strike all testimony of appellant. The following is the record of counsel's motion, and the Commission's action thereon.

"MR. HULTS: For the record, at the close of the testimony of Kansas Public Service Company, I would like to strike all of the testimony on the basis that they have no right here to present any affirmative testimony in regard to being certified or keep from having the area surrounding the City of Lawrence served.

"CHAIRMAN MITCHELL: It will be taken under advisement. Gentlemen, is there any more testimony to come into this record? Do you have some rebuttal testimony?"

Likewise, at the conclusion of Union Gas' evidence, a motion was

made by The Greeley Gas Company, the Kansas Power & Light Company, and Public Service to dismiss all of Union Gas' application which was not supported by evidence of public need. The chairman stated the motion would be taken under advisement, and ruled upon by the Commission. Thereafter, staff counsel for the commission moved that all portions of all applications by the parties for which no testimony was offered indicating a presently existing need for service in the area sought by the applicants, be denied. Again the chairman stated the motion would be taken under advisement, and ruled upon by the Commission.

The record discloses that at no time during the hearing or afterward, or at the rehearing, or thereafter, did the Commission make any ruling on any of the motions. Manifestly, this was error. We are not advised whether the Commission did or did not consider the evidence offered by Public Service, or whether, in chambers, it considered Union Gas' motion to strike all the testimony of Public Service.

In the proceedings for judicial review of the challenged order, the district court had before it all of the evidence presented before the Commission, except the exhibits above referred to, which were not included in the transcript. We can be sympathetic with the district court in that it did not realize it had not been provided a full and complete record of the hearing. Like this court on appellate review, the district court could not be sure whether the Commission did or did not consider Public Service's evidence, and it is evident it did not consider the exhibits since they were not included in the transcript. The omission of these exhibits was not discovered until counsel for Public Service prepared its Designation of Contents of the Record on appeal.

Proper procedure requires the Commission to rule on all motions and objections to evidence so the record clearly reflects what evidence and exhibits the Commission took into consideration in arriving at its final decision.

Our consideration of the record requires us to reverse the judgment of the district court. The case is remanded to the district court with instructions to issue an order setting aside the order of the State Corporation Commission issued October 20, 1965, and its order on rehearing, and remand the case to the Commission for further proceedings consistent with this opinion.

It is so ordered.